Jeri A. MULLIN, Individually, and as custodial parent of Kathleen Mullin and Shawn Mullin, deceased, Appellants (Plaintiffs below),

v.

MUNICIPAL CITY OF SOUTH BEND, Appellee (Defendant below).

No. 71S03–9408–CV758.

Supreme Court of Indiana.

Aug. 19, 1994.

Robert D. Lee, William T. Webb, Hardig, Lee & Groves, South Bend, for appellant, Jeri A. Mullin.

Robert C. Rosenfeld, Deputy City Atty., South Bend, for appellee, City of South Bend.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Jeri Mullin lived in South Bend with her two children, Shawn and Kathleen. At 5:27 a.m. on November 5, 1985, a neighbor reported a fire at the Mullin household to the 911 Emergency Dispatch of the South Bend Police Department. When the dispatcher asked if anyone was inside the house, the neighbor responded "I think so." Fire trucks but no ambulances were dispatched to the scene. Once there, one of the fire units requested an ambulance, the first of which arrived at 5:44 a.m. Shawn died; Kathleen was injured. Mullin filed suit against the City of South Bend, alleging that the City was negligent for the dispatcher's failure to send an ambulance to the scene immediately.

The following notice had been posted in the dispatchers' break-room at the police department in June, 1984:

On Friday 6/21/84 the Communications Supervisors and the Fire Dept. Chiefs met to discuss the Status of the Fire Dispatch. This meeting was very productive and out of it came several suggestions that we need to impliment [sic] in order that we can better searve[sic] the public interest and insure that we are doing what is desired in the area of Fire Dispatch; Following are the changes and or additions effective with this Memo.... MEDICS will be dispatched to all calls involving HIGH RISES, NURSING HOMES, RIVER RUNS, SHOPPING MALLS upon reiept [sic] of a Fire Call or Fire Alarm. In addition the MEDIC will be dispatched to ALL FIRE CALLS WERE [sic] SOMEONE IS THOUGHT TO BE INSIDE. IF UNK[NOWN] THEN DO NOT SEND THE MEDICS.

The City moved for summary judgment arguing that it was immune from liability under the Tort Claims Act, Indiana Code § 34-4-16.5-3(6) & (7) (1993), and that it breached no private duty owed to the plaintiffs. The trial court granted the motion finding as a matter of law that the City owed no private duty to Mullin or her children. The trial court did not decide whether the City is immune under the Indiana Tort Claims Act. Mullin appealed; the Court of Appeals affirmed the entry of summary judgment on the same grounds. *Mullin v. Municipal City of South Bend* (1993), Ind.App., 618 N.E.2d 42.

Mullin now seeks transfer, and asks that we hold that the City is not immune and recognize that the City was under a common law duty to send an ambulance to her home once the dispatcher knew or reasonably should have known that the Mullin house was on fire and occupied. We address the immunity and duty questions in turn.

### Standard of Review ·

■ This case was resolved by summary judgment. Our standard of review is well-established. The reviewing court faces the same issues that were before the trial court and follows the same process. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 366. Although the party appealing from the grant

of summary judgment has the burden of persuading the court that the grant of summary judgment was erroneous, the reviewing court carefully scrutinizes the trial court's decision to assure that the party against whom summary judgment was entered was not improperly prevented from having its day in court. *Id.*

Summary judgment is appropriate only if the pleadings and evidence sanctioned by Indiana Trial Rule 56(C) show "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Even if the facts are undisputed, summary judgment is not proper if those undisputed facts "give rise to conflicting inferences which would alter the outcome." *Bochnowski v. Peoples Federal Sav. & Loan Ass'n* (1991), Ind., 571 N.E.2d 282, 285. The burden is on the moving party to prove the non-existence of a genuine issue of material fact. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. If the movant sustains this burden, the opponent may not rest upon the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. T.R. 56(E). If there is any doubt, the motion should be resolved in favor of the party opposing the motion. *Oelling*, 593 N.E.2d at 190.

### *Immunity*

Because immunity, if applicable, renders moot the issue of duty in this negligence claim, we address it first. *Peavler v. Monroe County Bd. of Comm'rs.* (1988), Ind., 528 N.E.2d 40, 46–47.

The immunity asserted by the City is regulated by the Tort Claims Act, Indiana Code §§ 34–4–16.5–1 through 34–4–16.5–22 (1993). Governmental entities, such as cities, are subject to liability for the torts committed by their employees unless one of the exceptions in the Act applies. *Peavler*, 528 N.E.2d at 42. Because the Act is in derogation of the common law, we construe it nar-

rowly against the grant of immunity. *Hinshaw v. Board of Comm'rs. of Jay County* (1993), Ind., 611 N.E.2d 637, 639. The party seeking immunity bears the burden of establishing its conduct comes within the Act. *Peavler*, 528 N.E.2d at 46.

Indiana Code § 34–4–16.5–3 provides in pertinent part:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
>
> . . . .
>
> (6) the performance of a discretionary function.
>
> [or]
>
> (7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations) unless the act of enforcement constitutes false arrest or false imprisonment.

Immunity for discretionary functions encompasses the notion that certain types of decisions made by the executive and legislative branches of government should not be subject to judicial review because of the separation of powers doctrine, because litigation might have a "chilling effect" on the government's resolution of difficult policy issues, or because certain governmental decisions cannot be adequately reviewed using a traditional tort standard of negligence. *Peavler*, 528 N.E.2d at 44. Whether a particular governmental activity is a discretionary function is a question for the court, not the factfinder. *Id.* at 46.

Indiana applies the "planning/operation" test for determining whether governmental acts are "discretionary." *Id.* The test is not a bright-line one, but instead is a function of the particular circumstances of each case. As a general statement, immune planning activities include the formulation of basic policy on matters such as the allocation of resources. *Id.* at 45.[1] Thus, for example,

1. *Peavler* set out the factors to be considered in making the determination:
 1. The nature of the conduct—
 a) Whether the conduct has a regulatory objective;

 b) Whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard;
 c) Whether the conduct requires a judgment based on policy decisions;

under this test, placement of traffic signs might be a discretionary function, *Peavler,* 528 N.E.2d at 48, but is not necessarily so. *Board of Comm'rs. of Adams County v. Price* (1992), Ind.App., 587 N.E.2d 1326, 1331, *trans. denied. See also Gerbers, Ltd. v. Wells County Drainage Bd.* (1993), Ind.App., 608 N.E.2d 997, 1000, *trans. denied* (county drain board's approval of filling drain was discretionary); *Cromer v. City of Indianapolis* (1989), Ind.App., 540 N.E.2d 663, 666 (decision of city council not to redesign road fell under discretionary immunity); *City of Seymour v. Onyx Paving Co.* (1989), Ind. App., 541 N.E.2d 951, 954, *reh'g denied, trans. denied* (city's issuance of a stop work order was discretionary function); and *Boyle v. Anderson Fire Fighters Ass'n Local 1262, AFL–CIO* (1986), Ind.App., 497 N.E.2d 1073, 1078, *trans. denied* (city's decision concerning alternative means to fight fire after fire fighters went on strike is exercise of discretion).

■ Most instructive is *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364. In that case, a motorcyclist was killed when he collided with a bull that had wandered onto the highway. Two hours before the collision, the sheriff's office was notified that cattle were loose. A dispatcher began attempts to identify and contact the owner of the cattle, but without success. Plaintiff alleged that the sheriff's department was negligent in its attempts to do so. Seeking immunity under Indiana Code § 34–4–16.5–3(6), the sheriff contended that because the dispatcher had had to prioritize competing demands, the dispatcher had engaged in policy formulation. This Court rejected that characterization of the dispatcher's activities. Instead, the record showed that the dispatcher was merely following a pre-determined policy for locating the owners of stray livestock. Thus, the decisions made by the dispatcher about whom to contact and when were merely operational. *Greathouse,* 616 N.E.2d at 367. As Justice DeBruler wrote for the Court, "If policy formulation included every act which involves any element of choice, judgment or ability to make responsible decisions, every act would then fall within the discretionary function exception." *Id.* at 368.

As *Greathouse* and *Peavler* suggest, the City's decision to adopt a policy limiting the circumstances that ambulances would be sent to fires might well be a discretionary activity of city government. However, the outcome of this case does not depend upon whether the City is negligent for having adopted such a policy, but rather whether the City was subject to liability because the policy was not followed.

The City argues that dispatchers were required to exercise judgment when deciding whether to send an ambulance and that this judgment constituted the type of policy decisions covered by the Act. As such, its argument is the same one rejected in *Greathouse.* The dispatcher may have exercised judgment in deciding whether to send an ambulance to the fire, but such judgment was exercised only in the context of following a pre-determined policy.

■ The City's claim of immunity under Indiana Code § 34–4–16.5–3(7) is also misplaced. That section provides immunity for "the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations) unless the act of enforcement constitutes false arrest or false imprisonment." The City reasons that the policy of not sending ambulances to unoccupied house fires is a "rule or regulation" within the meaning of Section 3(7); if the dispatcher failed to follow that policy, that was a failure to enforce a rule or regulation, thus, the City is immune under Section 3(7). In essence,

d) Whether the decision involved adopting general principles or only applying them;

e) Whether ·the conduct involved establishment of plans, specifications and schedule; and

f) Whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources.

2. The effect on governmental operations—

a) Whether the decision affects the feasibility or practicability of a government program; and

b) Whether liability will affect the effective administration of the function in question.

3. The capacity of the court to evaluate the propriety of the government's action— Whether tort standards offer an insufficient evaluation of the plaintiff's claim.

*Peavler,* 528 N.E.2d at 46.

the City argues that the failure of a government employee to follow a governmental policy can never give rise to governmental liability for negligence.

But following governmental policy is not the same as enforcing it, at least in the context of the Tort Claims Act. A lengthy discussion of the meaning of "enforcement" as used in Section 3(7) is found in *Quakenbush v. Lackey* (1993), Ind., 622 N.E.2d 1284, 1287 n. 3, *reh'g denied.* While the scope of enforcement extends well beyond "traditional law enforcement activities such as the arrest or pursuit of suspects by police," *id.,* the cases cited in *Quakenbush* make clear that the scope of "enforcement" is limited to those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof.

Here, the City was neither compelling or attempting to compel obedience of another to its rule or regulation nor sanctioning or attempting to sanction a violation thereof and so was not engaged in enforcement within the meaning of Section 3(7).

The acts of the dispatcher do not fall within the scope of immunity provided by the Tort Claims Act. Accordingly, the City is not immune.

### *Duty*

 The absence of immunity does not necessarily result in a legally cognizable claim of negligence. To succeed in a negligence action, the plaintiff must establish: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to that standard; and (3) an injury proximately caused by the breach of duty. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, *reh'g denied.*

 Summary judgment was granted to the City because of the absence of a duty. Mullin asserts that the City owed her a duty to dispatch an ambulance to her house once the City knew or reasonably should have known that the Mullin house was both occupied and on fire. The City responds that the duty to respond, if any, was a duty owed to the public, not to a private individual.

 The existence of a duty is a question of law for the court. *Gariup Constr. Co. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227. In determining whether a duty exists, the court balances three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Webb v. Jarvis,* 575 N.E.2d at 995. When the government's duty is one owed to the public at large, there is no governmental liability for negligence. Instead, where a plaintiff seeks recovery against a governmental entity, the relationship between the parties must be one that gives rise to a private duty owed to a particular individual. *Greathouse,* 616 N.E.2d at 368. Other states also apply this distinction between public and private duties. *See generally* John H. Derrick, Annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory That Only General, Not Particular, Duty Was Owed under Circumstances,* 38 A.L.R.4th 1194 (1985).

Mullin acknowledges this distinction between a duty owed to the public and a duty owed to a particular individual and that, standing alone, a city's dispatch of emergency services does not create a private duty. She points out, however, that Indiana courts have not articulated a test to determine when such a private duty exists, and urges us to find a private duty if (1) the identity of the plaintiff is reasonably foreseeable so as to distinguish the plaintiff from the general public; and (2) the injuries suffered by the plaintiff are reasonably foreseeable. Application of this test to her case, she argues, would establish that the City owed a private duty to dispatch an ambulance immediately.

Mullin's proffered test focuses solely on the element of foreseeability. Although we agree that foreseeability is one factor in the duty equation, *Webb* teaches that it is not the only consideration. A foreseeable plaintiff with a foreseeable injury is not, standing alone, sufficient to establish a private duty of a governmental entity.

284

The City urges us to adopt a different test set out in *Cuffy v. City of New York*,' 69 N.Y.2d 255, 513 N.Y.S.2d 372, 505 N.E.2d 937 (1987). This test provides that a private duty to dispatch an ambulance exists only where (1) the city assumes a duty, either by promise or action; (2) the city knows that inaction could lead to harm; (3) there is some direct contact between the city and the injured party; and (4) the injured party justifiably relies on the city's promise. *Id.*, 513 N.Y.S.2d at 375, 505 N.E.2d at 940.

In contrast to Mullin's foreseeability model, the *Cuffy* test addresses the relationship between the parties and public policy concerns as *Webb* requires. As the *Cuffy* court stated:

[T]he injured party's reliance is as critical in establishing the existence of a special relationship as is the municipality's voluntary affirmative undertaking of a duty to act. That element provides the essential causative link between the "special duty" assumed by the municipality and the alleged injury. Indeed, at the heart of most of these "special duty" cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection. On the other hand, when the reliance element is either not present at all or, if present, is not causally related to the ultimate harm, this underlying concern is inapplicable, and the invocation of the "special duty" exception is then no longer justified.

*Id.* at.375, 505 N.E.2d at 940 (citations omitted).

After review of applicable authorities and consideration of the policy issues at stake, we find the better analysis was expressed in *City of Rome v. Jordan*, 263 Ga. 26, 426 S.E.2d 861, 863 (1993), where the court required the following elements for imposition of a private duty on governmental defendants:

(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;

(2) knowledge on the part of the municipality that inaction could lead to harm; and

(3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

This test is identical to that expressed in *Cuffy*, except that it does not require any direct contact. The Georgia court deleted the direct contact requirement for two reasons. First, because there might be many instances in which the injured party was unable to contact the municipality's agents directly, for example, because of physical limitations, yet meets the other requirements of the test. The court reasoned that to free the municipality from a duty solely because of such limitations would be unfair. *City of Rome*, 426 S.E.2d at 863. Second, the Georgia court observed that the states requiring direct contact did so on the theory that there could be no reliance on the city's promise without such contact, but concluded that this concern was addressed by the requirement of detrimental reliance. *Id.*

We are persuaded that the *City of Rome* test is the better one for identifying the existence of a private duty because this test takes into account each of the three factors *Webb* requires that we balance. Not only must the harm to the injured party be foreseeable, the relationship between the governmental entity and the injured person must be such that the governmental entity has induced the injured person justifiably to rely on its taking action for the benefit of that particular person to his detriment. The test also accommodates existing law reflecting a public policy that the mere existence of rescue services does not, standing alone, impose upon the governmental entity a duty to use them for the benefit of a particular individual. *See Simpson's Food Fair, Inc. v. City of Evansville* (1971), 149 Ind.App. 387, 394–95, 272 N.E.2d 871, 876 ("We will not impose upon the government the obligation to *guarantee* and *assure* the health, wealth and happiness of every living person. The law must encourage and protect those subjective values, goals and ideals where possible but it cannot guarantee them." (Emphasis in the original)). However, where the governmen-

tal entity is aware of the plight of a particular individual and leads that person to believe that governmental rescue services will be used, and the individual detrimentally relies on that promise, it would be unfair to leave that individual worse off than if the individual had not sought assistance from the government at all.

This test is consistent with previously decided Indiana cases. For example, in *Greathouse,* although the dispatcher was aware of the loose cattle and knew or should have known that it posed a risk to the general public, there was no assurance by the governmental entity that it would act on behalf of the motorcyclist and no reliance on governmental activity by the motorcyclist. *See* 616 N.E.2d at 369. *See also Lewis v. City of Indianapolis* (1990), Ind.App., 554 N.E.2d 13, 15, *trans. denied* (no private duty for lack of emergency response because there was neither the assurance of help from the city nor reliance by the plaintiff); *City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184, 1187, *trans. denied* (city gave no assurance that firemen would respond in a particular way).

A review of the evidence most favorable to Mullin reveals no assurance by the City that an ambulance would be dispatched to the fire immediately. Rather, the dispatcher advised the neighbor that the fire department was on its way, and indeed fire trucks were dispatched to the scene. In addition, there is no evidence of any detrimental reliance. In fact, there is no evidence that Mullin was aware of any City policy governing the dispatch of ambulances. Under these circumstances, Mullin has failed to establish the existence of a private duty. The trial court properly entered summary judgment for the City.

### Conclusion

Accordingly, we now grant transfer and affirm the grant of summary judgment in favor of the City of South Bend. Ind.Appellate Rule 11(B)(3).

SHEPARD, C.J., and DeBRULER, J., concur.

GIVAN, J., concurs in result with separate opinion.

DICKSON, J., concurs and dissents with separate opinion.

GIVAN, Justice, concurring in result.

I concur in the result of the majority opinion in affirming the grant of summary judgment in favor of the City of South Bend; however, I disagree with the dictum contained in the majority opinion concerning whether the City has immunity under the Tort Claims Act, § Ind.Code 34–4–16.5–3(6)(7).

As pointed out by the majority opinion, that question was addressed in *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364. However, in the case at bar, this question was not addressed by either the trial court or the Court of Appeals and is introduced only *sua sponte* by way of dictum in the majority opinion.

I concur with the manner in which the Court of Appeals and the majority opinion deal with the raised issue of the duty to appellants in this case.

DICKSON, Justice, concurring and dissenting.

I concur with the majority opinion with respect to immunity and standard of review. However, I dissent from its discussion and conclusion as to the issue of duty. The legal determination of whether a duty exists in a particular case is not necessarily resolved by recourse to the three factors found useful by this Court in *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992. These should not constitute the exclusive tests for duty. Within two months of *Webb,* this Court contemporaneously recognized the nebulous nature of the concept of duty and the fact that no universal test for it has been formulated. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630.

> No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.

*Id.,* citing *Gariup Constr. Co., Inc. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227 (quoting W. Prosser & W. Keeton, *The Law of Torts*

§ 53, at 359 (5th Ed.1984)). The majority opinion presents an unnecessary and unwise construct. It is better that the common law avoid such artificial and rigid formulations.

I also disagree with the majority's conclusion that the plaintiffs failed to establish the existence of a private duty. To the contrary, the factual averments in this case convince me that reasonable persons would recognize and agree that there exists a duty on the part of the City to exercise reasonable care in the answering of emergency calls from its citizens and in the dispatching of ambulances. I believe that summary judgment should be reversed and the cause remanded for trial.