Richard FISH, Appellant–Plaintiff,

v.

MONROE COUNTY, Indiana, Appellee–Defendant.

No. 53A01–9607–CV–225.

Court of Appeals of Indiana.

Dec. 18, 1996.

Rehearing Denied March 6, 1997.

---

Rudolph Wm. Savich, Bloomington, for Appellant–Plaintiff.

David C. Campbell, Karl Mulvaney Kelly A. Kappes, Bingham, Summers, Welsh & Spilman, Indianapolis, for Appellee–Defendant.

## OPINION

ROBERTSON, Judge.

Richard Fish appeals the grant of summary judgment in favor of Monroe County in his lawsuit for damages based upon an allegedly illicit agreement between the County and a third party corporation which allowed the corporation to operate in violation of the Monroe County Zoning Ordinance. The trial court granted summary judgment to the County based upon the assertion that the County has immunity under the Indiana Tort Claims Act. On appeal, Fish contends that the County does not qualify for such immunity under any of the stated provisions of the Act. We affirm.

On review of a motion for summary judgment, this Court applies the same standard as does the trial court. *American Family Mutual Insurance Co. v. Dye*, 634 N.E.2d 844, 846 (Ind.Ct.App.1994), *trans. denied.* We must determine whether a genuine issue of material fact exists and whether the trial court has correctly applied the law. *Cloverleaf Apartments, Inc. v. Town of Eaton*, 641 N.E.2d 665, 667 (Ind.Ct.App.1994). The purpose of summary judgment is to end litigation about which no factual dispute exists and which may be determined as a matter of law. *Flosenzier v. John Glenn Education Association*, 656 N.E.2d 864, 866 (Ind.Ct.App.1995), *trans. denied.* We liberally construe all inferences and resolve all doubts in favor of the nonmovant. *Id.* The grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden to demonstrate that the trial court committed error. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993).

The evidence most favorable to Fish reveals that he is the owner of a recording studio and residence just south of Bloomington, Indiana. In 1992, the Bloomington Asphalt Corporation purchased a portable asphalt plant and moved it to a location directly across the road from Fish's property. Prior to that time, only one other asphalt plant existed in Monroe County.

The site was zoned Industrial under the Monroe County Zoning Ordinance. The Ordinance allows for "General Industry" and "Light Industry" in the County. The Ordinance permits Light Industry uses without any review by the Plan Commission or the Board of Zoning Appeals. For General Industry uses, one must obtain a special exception from the Board of Zoning Appeals. Representatives of Monroe County informed the Corporation that it could operate the asphalt plant as Light Industry if all of its materials were within enclosed buildings, as required under the Ordinance, but that it could operate the plant under the Ordinance in open areas as General Industry only if it obtained a special exception.

The Corporation requested a special exception, and the Plan Commission held a hearing on the petition. Fish and several members of the public spoke against the petition. One of the County Commissioners stated that the County already had a contract with the Corporation for asphalt. The Plan Commission forwarded the petition to the Board of Zoning Appeals subject to some recommendations.

The Board of Zoning Appeals considered the petition at a hearing. Fish and others spoke against the special exception. Through its attorney, the Corporation acknowledged that it had bid for jobs in Monroe County before it had filed its petition for the special exception. The Board of Zoning Appeals eventually denied the petition.

The Corporation nonetheless operated the asphalt plant, ostensibly as a Light Industrial use within enclosed buildings. Fish disagreed that the plant qualified for such a use and asked the Plan Commission to investigate the matter. The Plan Commission authorized the County Attorney to investigate. Later, the Plan Commission was informed that the asphalt plant was up and running but the record of the minutes do not show that the Plan Commission took any action with regard to the plant.

The Monroe County Zoning Ordinance allows a property owner to enforce its provisions if the County Commissioners do not do so and if the property owner may be especially damaged. Fish believed the asphalt plant was not in compliance with the Ordinance and therefore filed a complaint in the Monroe Circuit Court to require the Corporation to halt any operation of the asphalt plant until the plant was in compliance. The Corporation claimed that its plant was in compliance with the Ordinance because it qualified as Light Industrial use within enclosed buildings. The trial court entered a judgment in favor of Fish after having found that the plant had been in violation of the Ordinance from the time it had commenced operations. The trial court fined the Corporation a total of $24,300.00, of which Fish obtained an award of $21,108.80 plus the costs of the action. Fish also prevailed on a petition for judicial review of the decision of the Indiana Department of Environment Management which had affirmed the issuance of an operating permit to the Corpora-

tion. The trial court set aside the site approval letter because the asphalt plant had never passed required air quality control tests.

In light of the decisions of the trial court, Fish asked the Plan Commission to order the asphalt plant to cease operations. The Plan Commission agreed to look at the documents related to the litigation but not to take any other action at that time. The Corporation eventually ceased operations at the asphalt plant for financial reasons. The award to Fish has become uncollectible. Fish spent in excess of $75,000 to enforce the Ordinance after Monroe County had refused to do so.

Fish filed a complaint against Monroe County to recoup his expenditures. Fish claimed that Monroe County had awarded substantial contracts to the Corporation to provide asphalt to the County. The prices the Corporation had charged per ton were substantially lower than the prices the only other competitor had charged at the time. As a result, Monroe County had saved a substantial sum of money. Fish claimed that agents of Monroe County and the Corporation had entered into a secret, tacit agreement in which the Corporation would provide asphalt to the County at a price below that charged by the competitor and, in exchange, the County would not enforce the Ordinance against the asphalt plant. Fish claimed that the County allowed the asphalt plant to operate illegally and obtained a large quantity of inexpensive asphalt at the expense of Fish and his neighbors. Fish further claimed that the immunity provisions of the Indiana Tort Claims Act did not protect the actions of the County.

■ Whether a governmental entity is immune from liability under the Indiana Tort Claims Act is a question of law for the court. *Jacobs v. Board of Commissioners of Morgan County*, 652 N.E.2d 94 (Ind.Ct.App. 1995), *trans. denied.* The Act provides:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

\* \* \* \* \* \*

(6) the performance of a discretionary function; however, the provision of medical or optical care, as provided in section 2(b) of this chapter, shall be considered as a ministerial act;

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment;

\* \* \* \* \* \*

(11) failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety.

Ind.Code 34–4–16.5–3. The trial court determined that each of the above subsections provided the Corporation with immunity. Inasmuch as we agree that I.C. 34–4–16.5–3(7) provides the Corporation with immunity, we need not determine whether the two other subsections also provide immunity under the circumstances.

The language of the Act provides that a "governmental entity ... is not liable if a loss results from ... the ... failure to ... enforce a law ..." The gist of the complaint here is that Fish suffered a loss which resulted from the failure of Monroe County to enforce its ordinance. At first blush, one must conclude that the Act provides immunity to Monroe County.

Nonetheless, Fish claims that the Act does not provide immunity to the County because the present case involves a breach of duty owed to Fish as a private individual rather than a duty owed to the public at large. *See Quakenbush v. Lackey*, 622 N.E.2d 1284 (Ind.1993). The source of the private duty is the following. Fish had appeared at all three of the public hearings held on the Corporation's request for a special exception. On each occasion, he had spoken against the asphalt plant, explaining his concerns and identifying the potential injuries he might suffer if the plant were permitted to operate. A letter from his attorney had prompted the Plan Commission to direct the County Attor-

ney to investigate the asphalt plant situation. A Plan Commission member had specifically inquired of Fish about the level of noise which his recording studio could tolerate. Fish personally informed the Plan Commission that he feared injury to his property from noise, vibrations, dust, traffic, and odors. Agents of Monroe County misinformed Fish that the Corporation was not required to enclose the plant itself within a building. Fish was an adjacent landowner who would have been one of the very limited number of individuals who would have had standing to bring a petition for writ of certiorari to review the decision of the Board of Zoning Appeals had it been adverse to his position. Due to the location of his property, Fish was a property owner especially damaged by the violation of the Ordinance. Despite the fact that the Corporation had no special exception to operate, the County purchased over one hundred thousand dollars worth of asphalt produced at the plant.

The duty to exercise care for the safety of another arises as a matter of law out of some relationship existing between the parties, and it is the province of the court to determine whether such relations give rise to a duty. *Greathouse v. Armstrong*, 616 N.E.2d 364, 368 (Ind.1993). Our supreme court has identified the following test for the identification of the existence of a private duty:

(1) an explicit assurance by the [governmental entity], through promises or actions, that it would act on behalf of the injured party;

(2) knowledge on the part of the [governmental entity] that inaction could lead to harm; and

(3) justifiable and detrimental reliance by the injured party on the [governmental entity's] affirmative undertaking.

*Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 284 (Ind.1994). The relationship between the governmental entity and the injured person must be such that the governmental entity has induced the injured person justifiably to rely on its taking action for the benefit of that particular person to his detriment. *Id.*

The most influential aspect of the relationship between Fish and Monroe County is that Fish was an adjacent landowner who would have been one of the very limited number of individuals who would have had standing to bring a petition for writ of certiorari to review the decision of the Board of Zoning Appeals had it been adverse to his position. Due to the location of his property, Fish was a property owner especially damaged by the violation of the Ordinance and therefore had the authority to bring his earlier lawsuit against the Corporation. We conclude, however, that his status as a neighboring landowner cuts against him in this instance. As noted, the procedures here gave Fish the authority to enforce the Ordinance in his own right and he did so with his proceedings against the Corporation. The existence of such a remedy supports the view that the County did not, along with the Ordinance's private remedy in favor of Fish, owe him an additional private duty to enforce the Ordinance.

The other evidence Fish identifies in support of a private duty reveals that Fish had appeared at all three of the public hearings and had spoken against the asphalt plant. Fish personally informed the Plan Commission that he feared injury to his property. These actions amounted to no more than those any other resident of the county could have pursued and do not support the existence of a private duty in favor of Fish.

A letter from Fish's attorney had prompted the Plan Commission to direct the County Attorney to investigate the asphalt plant situation. A Plan Commission member had specifically inquired of Fish about the level of noise which his recording studio could tolerate. The actions on the part of the Plan Commission, however, cannot be interpreted reasonably as "an explicit assurance" by the governmental entity which "induced" Fish's reliance on a belief that Monroe County "would act on behalf" of Fish in the enforcement of the ordinance. *See Mullin*, 639 N.E.2d at 284. The incidents alleged here do not support the existence of a private duty in favor of Fish.

Also, agents of Monroe County misinformed Fish that the Corporation was not required to enclose the plant itself within a building. The record reveals, however, that Fish knew of the requirements of the Ordinance at all relevant times and that he therefore could not have had "justifiable and detrimental reliance" upon any misinformation. *See Mullin,* 639 N.E.2d at 284. Again, any misinformation does not support the existence of a private duty in favor of Fish.

Fish places much emphasis upon the claim that Monroe County made a bargain with the Corporation whereby the County would allow the Corporation to violate the Ordinance in exchange for a supply of low cost asphalt. He notes that, even though the Corporation had no special exception to operate, the County purchased over one hundred thousand dollars' worth of asphalt produced at the plant. He contends that the agreement constitutes an affirmative act of negligence on the part of the County which itself caused Fish harm. In this regard, Fish attempts to distinguish *Mullin,* 639 N.E.2d 278, because the case involved either nonfeasance or a failure to protect, whereas the present case involves an affirmative act which caused his injuries. Regardless of any agreement between the County and the Corporation, the gist of the complaint, as noted, is that Fish suffered a loss which resulted from the failure of Monroe County to enforce its ordinance. Such injury is precisely the type of loss the language of the Act provides to a governmental entity. Fish has not demonstrated that Monroe County owed him a private duty or that the County did not qualify for immunity.

Fish further asserts that the agreement between Monroe County and the Corporation constitutes an act of bad faith on the part of the County which places the conduct outside the provisions for immunity. Fish does not, however, contend that any agent, officer, or employee of the County could be held personally liable for the alleged agreement or that any one of such individuals acted in bad faith. We decline to hold the County liable for the acts of its agents where the agents themselves are not liable for their own acts because to do so would be a danger-

ous precedent. *See Board of Commissioners of Delaware County v. Briggs,* 167 Ind.App. 96, 337 N.E.2d 852 (1975) (acknowledges that an action must have been undertaken in good faith but that the real basis for the liability of the state or the counties is actually the theory of respondeat superior and, if the servant is personally immune from liability, then the state must also be immune from liability). Again, any affirmative act on the part of the County which itself caused Fish harm constituted a loss which resulted from the failure to enforce the Ordinance. The Act therefore provided Monroe County with immunity.

The undisputed facts demonstrate that Monroe County was entitled to judgment as a matter of law. Fish has not met his burden to demonstrate that the trial court committed error. The trial court correctly granted summary judgment in favor of the County based upon immunity under I.C. 34–4–16.5–3(7).

Judgment affirmed.

HOFFMAN and RILEY, JJ., concur.