Bernadine **ALDRIDGE**, Raymond Aldridge, and Rodney L. Aldridge, Appellants–Plaintiffs,

v.

**INDIANA DEPT. OF NATURAL RE-SOURCES and State of Indiana,** Appellees–Defendants.

No. 49A02–9708–CV–511.

Court of Appeals of Indiana.

April 30, 1998.

Patrick R. Ragains, Smith, Ragains & Cotton, Anderson, for Appellants–Plaintiffs.

Jeffrey A. Modisett, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellee–Defendant.

## OPINION

SULLIVAN, Judge.

Bernadine Aldridge, Raymond Aldridge and Rodney L. Aldridge (Aldridges), appeal the trial court's entry of Judgment on the Evidence in favor of the Indiana Department of Natural Resources and the State of Indiana.

We affirm.

The Aldridges present one issue upon appeal, which we restate as follows:

(1) Whether the trial court erred in granting the State's Motion for Judgment on the Evidence after determining that the State did not owe a private duty to the Aldridges to protect them from falling tree branches at their campsite.

The Aldridges failed to show the State made explicit assurances, either by promise or action, regarding protection from falling trees. Accordingly, they were unable to establish the existence of a private duty, which is required to create government liability for negligence.

On Friday, July 12, 1995, the Aldridges went camping at Paynetown State Park in Monroe County. Separate admission fees were paid for entrance to the park and to the campground facilities. Upon admission to the campground, the Aldridges were assigned a camping site that did not provide any shade. The next day, the Aldridges requested campsite 104, because it was shady and provided a more convenient boat access to the lake. Park personnel granted their request and assigned them to site 104. Campsite 104 was located in the "modern campground" area, which provided extra facilities such as "comfort stations" and picnic tables.

On Saturday evening, July 13, it rained heavily. On Sunday, because water was running under and into the sides of the tent, the Aldridges moved their tent to higher ground. At approximately 5:00 p.m. on Sunday, the Aldridges decided to go into town because they heard a radio report that a storm front was approaching. The Aldridges went inside their tent to change clothes.

Before they were able to leave, a dead tree branch broke off a tree and landed on the tent, hitting Bernadine and Raymond. It was raining lightly around the time of the incident, and Bernadine stated in an affidavit that the branch fell "right before a thunderstorm during high winds." Record at 586. If the entire tree had fallen, it would have covered the length of the campsite.

Bernadine stated in her affidavit that park employees trimmed trees on occasion. However, there is no indication in the record whether the Aldridges obtained this knowledge before or after the incident. Rodney testified that a conservation officer told him, after the incident, that the tree was dead and should have been removed, but "we can't get them all." Record at 338.

Bernadine testified that her husband never mentioned to her the danger of camping under dead trees, and that they were not looking for dead trees when choosing a place to put the tent. Rodney testified that no one had to tell him to look out for dead trees. (R. at 352). As a result of being struck by the tree limb, Bernadine's vertebra was permanently deformed and she suffers from chronic back pain.

On April 9, 1997, after the Aldridges presented their case-in-chief before the jury, the State moved for judgment on the evidence. After hearing argument, the trial court granted the State's motion. In reaching its

decision, the trial court determined that the Aldridges failed to present sufficient evidence to satisfy the three-pronged test for the existence of a private duty as established by *Mullin v. Mun. City of South Bend* (1994) Ind., 639 N.E.2d 278, 283.

## PRIVATE DUTY

 The existence of duty is·a question of law for the court. *Webb v. Jarvis* (1991) Ind., 575 N.E.2d 992, 995, *reh'g denied.* In Indiana, the elements of actionable negligence are: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship to the plaintiff; (2) a failure by the defendant to conform his conduct to that standard; and (3) an injury proximately caused by the breach of duty. *Id.*

 However, a governmental entity is not liable for a negligent breach of a duty owed only to the general public at large. *Mullin, supra,* 639 N.E.2d at 283. The governmental entity is liable for its negligence only when the duty owed to the plaintiff is one that gives rise to a private duty owed to a particular individual. *Id.* at 284.

 A foreseeable plaintiff, with a foreseeable injury, is not, standing alone, sufficient to establish a private duty of a governmental entity. *Id.* at 283. Rather, a plaintiff must establish the following elements:

(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;
(2) knowledge on the part of the municipality that inaction could lead to harm; and
(3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking. *Id.*

 Because the Aldridges allege the State is liable for its negligent failure to act (failing to trim the dead tree-limb at campsite 104), the *Mullin* three-part test applies. *See Henshilwood v. Hendricks County* (1995) Ind.App., 653 N.E.2d 1062, 1067, *trans. denied.* Under the first prong of the *Mullin* test, unless the State made specific assurances to the Aldridges that it would act on their behalf, no private duty existed. The mere fact that the Aldridges may have, to

some small extent, relied upon the existence of tree-trimming services when. choosing their campsite location, did not transform an otherwise general duty, owed to the public at large, into a private duty, owed specifically to the Aldridges.

 "[T]he relationship between the governmental entity and the injured person must be such that the governmental entity has induced the injured person justifiably to rely on its taking action for the benefit of that *particular person* to his detriment." *Mullin, supra,* 639 at 284. (Emphasis supplied). No private duty exists where the governmental entity does not make any promises or specific assurances that it will act or has acted on behalf of a particular individual. *See id.* at 284 (mere existence of rescue services did not impose upon the governmental entity a duty to use them for the benefit of a particular individual).

In *Plummer v. Bd. of Com'rs of St. Joseph* (1995) Ind.App., 653 N.E.2d 519, 523, *trans. denied,* this court held that the mere placement of lifeguards at a lake, standing alone, did not create a private duty under the test established in *Mullin.* In reaching its decision, the court quoted from *City of Evansville v. Blue* (1937) 212 Ind. 130, 139–40, 8 N.E.2d 224, 229:

> " 'There is some difficulty in concluding that, because a municipal corporation, in the public interest and for the protection of the young, furnishes them a place to swim, safer than a natural stream or·lake, and furnishes some supervision or policing, and guards to protect against the danger of drowning, which is inherent in swimming, it should be held responsible for unfortunate accidents because it has gone but part way and not furnished complete protection against drowning....' " (Emphasis omitted).

Similarly, the State's choice to institute a policy of trimming trees, like the choice to employ lifeguards in *Blue,* did not create a private duty to protect a specific individual, or group of individuals. As in *Blue,* simply because the State instituted a tree-trimming policy which failed to furnish complete protection from falling tree-limbs, the mere existence of the policy was insufficient to create a private duty owed to every camper.

In our case, the fact that the Aldridges may have been made aware of the campground's tree-trimming policy did not create a situation where the State expressly assured the Aldridges that it would act on their behalf to protect them from falling trees at their campsite.[1] Therefore, the State did not owe the Aldridges a private duty to protect them from falling tree limbs.

 Also, the fact that the Aldridges were the only campers assigned to campsite 104 could not, without more, create a private duty. If that were true, then each campsite assigned by the State would constitute its own individual oasis of private duties. A private duty is created through explicit assurances that a governmental entity will act or has acted on an injured party's behalf. Therefore, the question of whether or not a private duty exists does not turn on the number of individuals relying on an otherwise general assurance of the existence of protective-type services. Also, a private duty is not created simply because a governmental entity, to some small extent, may have induced reliance on those protective-type services by directing or limiting the conduct of the individuals involved. Rather, it is the explicit and specific nature of the assurance, and the corresponding justifiable and detrimental reliance, which is determinative.

For example, the otherwise general duty which exists when a governmental entity employs lifeguards to monitor public pools is not automatically transformed into a private duty simply because: (1) the govern-mental entity provides only one pool, thus dictating where each individual must swim; or (2) only one person chooses to swim on a particular day. Similarly, no private duty was created when park personnel allegedly informed the Aldridges of the campground's tree-trimming policy, and then assigned them exclusive access to campsite 104.

Additionally, the fact that the State charged the Aldridges a fee to enter the park and the "modern campground" area did not give rise to a private duty. *See Cain v. Bd. of Comm'rs of Cass County* (1986) Ind.App., 491 N.E.2d 544, 548 (fee charged to enter county park).

The judgment of the trial court is affirmed.

FRIEDLANDER and KIRSCH, JJ., concur.

---

1. There is no evidence in the record indicating that the Aldridges, in deciding to switch to campsite 104, ever relied on assurances regarding protection from falling trees. In fact, the evidence clearly shows that the Aldridges specifically requested relocation to a wooded campsite in order to have shade. During Rodney's cross-examination, the following exchanges took place:
 "Q. Does anybody have to tell you in any of these camp sites to look out for dead trees?
 A. No.
 Q. That's because it's something that you knew that you should do. Is that right sir?
 A. Well, if you know for sure it's dead." Record at 352.
 Bernadine gave the following testimony during her cross examination:

"Q. You've been camping with your husband for—during—at this time for the twenty years that you were married, is that right?
A. Yes. Record at 570.
"Q. And he's never mentioned to you anything about the danger of camping under a dead tree?
A. No.
Q. Okay. It never occurred to you to check around while you were inspecting for a good place to put this tent and determine whether or not any of the trees were dead?
A. We were looking for shade." Record at 570.