Richard L. RENNICK, Jr., Administrator of the Estate of John D. Clore, Deceased, Appellant–Plaintiff,

v.

NORFOLK AND WESTERN RAILROAD and Rogers Group, Inc., Appellees–Defendants.

No. 86A03–9905–CV–192.

Court of Appeals of Indiana.

Jan. 13, 2000.

James R. Bunch, Wallace Campbell Bunch, Shambach Rennick & Orr, Covington, Indiana, Stephen L. Williams, Mann Law Firm, Terre Haute, Indiana, Attorneys for Appellant.

David A. Locke, John C. Duffey, Stuart & Branigan, Lafayette, Indiana, Attorneys for Appellee, Norfolk and Western Railway Company.

Amy R. Kennelly, Bose McKinney & Evans, Indianapolis, Indiana, Attorney for Appellee, Rogers Group.

## OPINION

DARDEN, J.

### STATEMENT OF THE CASE

Richard L. Rennick, Jr., administrator of the estate of John D. Clore, deceased, ("Estate"), appeals the trial court's grant of summary judgment in favor of Norfolk and Western Railroad ("NW") and Rogers Group, Inc. ("Rogers").

We affirm.

### ISSUE

Whether summary judgment was erroneously granted.

### FACTS

Near Williamsport, in Warren County, Rogers operates a gravel quarry. Imme-

diately east of the quarry is Washington Street, running north to south. Washington intersects at a right angle with NW's railroad track, running from west to east.

On November 15, 1996, John Clore drove a dump truck to the quarry for a load of gravel. It was his fourth trip that morning to the quarry, his 44th trip within a month. Clore exited from the quarry onto Washington Street and turned north on Washington to cross the intersecting railroad tracks. As his truck crossed the tracks, it was struck by a NW eastbound train. Clore died from his injuries. Estate brought the instant action, claiming that (1) Rogers "negligently and carelessly maintained the exit from their property onto [the] railroad crossing," and (2) NW[1] "negligently and carelessly operated its locomotive." (R. 33, 34).

Both Rogers and NW moved for summary judgment. Affidavits were submitted establishing that Rogers' exit did not intersect with the railroad crossing; rather the exit from its property was to Washington Street, a public highway, which intersected with the railroad crossing. NW submitted evidentiary material establishing that at the time of the accident, the train was operating its lights, engine bell, and whistle; the crossing's warning flasher lights were activated (including the set directed at the quarry exit); the train was traveling at 59–60 miles per hour; and the federally prescribed maximum speed for that part of track was 60 miles per hour. In response, Estate submitted an affidavit of truck driver George Nesbitt, opining that it was the exit from Rogers' property that caused the accident. Estate further submitted a letter that Clore's widow had received from an officer at NW stating that NW's operating timetable speed for

that part of the track was 50 miles per hour. Thereafter, NW submitted a supplemental affidavit from NW's Foreman of Engines, with attached NW timetable, showing the speed limit for the type of train that struck Clore was sixty miles per hour for that part of the track.

After hearing arguments, the trial court granted summary judgment to Rogers and NW, finding "no genuine issues of any material fact which would allow" recovery from Rogers, and "no genuine issues of material fact on the issues of the manner in which [NW] maintained its crossing and operated its locomotive" to allow recovery from NW. (R. 350).

## DECISION

Our supreme court has recently described the standard of review as

the same standard used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. The moving party bears the burden of proving the absence of a genuine issue of material fact. If the movant sustains this burden, the opponent must set forth specific facts showing that there is a genuine issue of fact.

*Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 984 (Ind.1998) (citations omitted). This latter response, whereby specific facts are set forth, requires more than simply resting upon the pleadings. *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 281 (Ind.1994).

### A. *Summary Judgment as to Rogers*

■ Estate first argues that there is a genuine issue of material fact as to wheth-

---

1. This defendant is called "Norfolk and Southern Railroad" on the docket. The plaintiff so named the defendant in the original complaint; however, an immediate filing with the trial court from "Norfolk and Western" indicated that "Norfolk and Southern Railroad" was "not a legal entity," and that the accident referred to in the complaint "in-

volved a train owned and operated by Norfolk and Western Railway Company." (R. 24). Plaintiff's amended complaint substituted "Norfolk and Western Railroad Company" as defendant. Subsequent trial court filings, the trial court's order being appealed, and the briefs all use the "Norfolk and Western" name in the case caption.

er Rogers "negligently and carelessly maintained the exit from their property onto the railroad crossing." Estate's Brief at 11. Estate directs us to the complaint, which so alleges. However, Rogers' designated evidence establishes the fact that the exit from the quarry is to Washington Street, a public highway; and Rogers also directed the trial court to IND.CODE § 8–6–7.6–1, which provides that railroads shall maintain public crossing visibility. To respond, Estate merely rested upon its pleading; this is not sufficient. *See Mullin*, 639 N.E.2d at 281.

Estate cites *Indiana Limestone Co. v. Staggs*, 672 N.E.2d 1377 (Ind.Ct.App.1996). *trans. denied*, and RESTATEMENT (SECOND) OF TORTS § 368, as imposing a duty on Rogers "to take reasonable precautions to guard against the danger created by the location of the property adjacent to the public highway and railroad crossing." Estate's Brief at 8. In *Indiana Limestone*, the injury occurred on Indiana Limestone's property when a motorist's car left the roadway, fell thirty feet into an adjacent quarry, and submerged beneath twenty-five feet of water. Similarly, RESTATEMENT § 368 discusses the liability of a landowner who "creates or permits to remain thereon an excavation or other artificial condition" near a highway where that condition "involves an unreasonable risk to others accidentally brought into contact with such condition." According to the designated evidence, Clore's injuries did not occur on Rogers' quarry property but in the intersection of Washington Street, a public highway, and the train crossing. Further, no designated evidence indicates that an excavation or other artificial condition of the quarry injured Clore when he was "accidentally brought into contact" therewith. *Id.*

■ Estate further cites RESTATEMENT (SECOND) OF TORTS § 343, concerning a landowner's liability for physical harm caused to his invitees by a condition of the land. As we recently noted,

a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land *if,* but *only if,* he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, *and* (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, *and* (c) fails to exercise reasonable care to protect them against the danger.

*Ozinga Transp. Systems v. Michigan Ash Sales*, 676 N.E.2d 379, 385 (Ind.Ct.App. 1997), *trans. denied*, (quoting *Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind.1991) (quoting RESTATEMENT (SECOND) OF TORTS § 343)) (emphasis added). According to Estate, the quarry exit created a danger. However, no material evidence indicates that injury resulted from Clore's exiting from the quarry onto Washington Street. Further, the risk of harm that Estate would have Rogers protect Clore from was the risk of being struck by a train at the intersection of the railroad crossing and a public highway, whereas a public railroad crossing is a known place of danger against which Clore should reasonably be expected to protect himself. *See Bailey v. Martz*, 488 N.E.2d 716, 721 (Ind.Ct.App. 1986), *trans. denied*.

Finally, Estate argues that the truck driver's affidavit establishes a material issue of fact about the exit's safety. Even if Mr. Nesbitt's statement of his opinion that the quarry exit was a cause of Clore's fatal accident on the railroad crossing were admissible,[2] Estate has failed to direct us to an applicable theory of negligence law

2. Rogers asked the trial court to strike the paragraphs Nesbitt's affidavit stating

   5. That the exit from the gravel pit, that is maintained by [Rogers] makes it impossible to cross the [NW] tracks at a ninety degrees [sic] angle which would maximize your

ability to see trains from the South as well as North.

   6. The angle created by the gravel pit exit in relationship to the railroad tracks is at such a diminished angle (compared to ninety degrees) that you literally have to turn

whereby Estate could recover from Rogers if it so proved when it is undisputed that Clore's injuries were sustained when his truck was struck by a train at a railroad crossing on a public street.[3]

### B. *Summary Judgment for NW*

■ As to NW, Estate claims summary judgment was erroneous because the statement about NW's speed limit contained in the letter to Clore's widow establishes a "genuine issue of material fact as to whether [NW] was negligen[t] in operating at speeds in excess of its own operating timetable when [Clore] was struck and killed by the [NW] train." Estate's Brief at 21. NW responds that any claim of negligence for operating in excess of its own operating timetable limit is preempted by the Federal Railroad Safety Act ("FRSA"). We must agree.

It is undisputed that the NW train was traveling at 60 miles per hour or less. It is also undisputed that the federally prescribed speed limit for that section of track is 60 miles per hour. In *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the Supreme Court of the United States held that when the Secretary of Transportation, acting through the Federal Railroad Administration, promulgated regulations under FRSA setting maximum train speeds for different classes of track, such covered the subject matter of and, therefore, preempted a state law claim of negligence based upon a train's speed. Accordingly, because the train's speed was in compliance with the federally prescribed speed limit at the time of the accident, Estate's claim of NW's negligence based upon excessive speed under a NW timetable must fail as a matter of law. *See Estate of Martin v. Consolidated Rail*, 620 N.E.2d 720, 724 (Ind.Ct. App.1993), *trans. denied.*

We affirm.

BROOK, J., concurs.

KIRSCH, J., concurring in part and dissenting in part.

KIRSCH, Judge, concurring in part and dissenting in part.

I fully concur in the majority's decision affirming summary judgment in favor of Norfolk & Southern Railroad. From their decision affirming summary judgment in favor of Roger's Group, Inc., I respectfully dissent.

To prevail on a summary judgment motion in a negligence case, the defendant must demonstrate that the undisputed material facts negate at least one element of the plaintiff's case or that the claim is barred by an affirmative defense. *Jacques v. Allied Bldg. Svcs. of Indiana*, 717 N.E.2d 606, 608 (Ind.Ct.App.1999); *Goldsberry v. Grubbs*, 672 N.E.2d 475, 476 (Ind. Ct.App.1996). The party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists. *Jarboe v. Landmark Community Newspapers*, 644 N.E.2d 118, 123 (Ind.1994). I believe that Rogers has failed to meet this burden.

To recover on its claim, John Clore's estate must establish: 1) that Rogers owed

---

around in your truck seat to look south or left to see on coming [sic] trains.

7. That having exited this gravel pit hundreds of times it is his opinion that the manner in which the exit was custructed [sic] and is being maintained was a cause of [affiant's] accident as well as the accident which claimed John Clore's life on November 15, 1996.

The trial court ruled it would consider only the portions of Nesbitt's affidavit "that may be admissible." (R. 350). Estate claims this ruling was error and appears to argue that the affidavit was admissible in its entirety. Because our conclusion as to summary judg-

ment for Rogers assumes the admissibility of the affidavit statements, we need not reach Estate's arguments in that regard.

3. The dissent relies upon a scale drawing to find that the exit from the Rogers' property is "only a few feet from the tracks." We are unable to so rely because the drawing is part of documentation about the railroad crossing in 1976, and there is no designated evidence indicating that his drawing accurately represents the current configuration of the railroad crossing and access from the Rogers' property to the highway.

a duty to John Clore; 2) that Rogers breached that duty; and 3) that John Clore's death was proximately caused by Rogers' breach. *Jacques,* 717 N.E.2d at 608. The estates alleges in its complaint that Rogers "negligently and carelessly maintained the exit from their property onto [the] railroad crossing." *Record* at 33. The designated materials fail to establish the lack of factual questions regarding whether Rogers was negligent in the maintenance of the exit or whether that negligence was a proximate cause of Clore's death. The issue thus becomes whether Rogers owed a duty to Clore.

Rogers claims, and the majority holds, that because the exit from the Rogers' property was onto a public street, not directly onto the railroad tracks. Rogers owed no duty to Clore regarding the tracks. The designated materials, however, show that the tracks border the Rogers' property. One turning left from the exit onto the public street immediately encounters the tracks. The designated materials include a scale drawing of the exit which shows that the exit is only a few feet from the tracks.[4] Indeed, it appears that a vehicle exiting the Rogers' property may well have its front end in the railroad right-of-way while its rear end is still on Rogers' property. *Record* at 237. Moreover, the relationship of the exit, the road and the tracks is such that a driver exiting the Rogers' property to the left comes upon the tracks at such an angle that the drivers' visibility is hampered making it difficult to see an approaching train. *Record* at 168. It may also be difficult for a driver exiting the Rogers' property to see the automatic warning signal.

A property owner owes a duty to its invitees to provide safe means of ingress and egress from the property. There are questions of fact whether Rogers breached this duty. I would reverse the entry of summary judgment for Rogers Group and allow the trier of fact to resolve these issues.

---

4. In footnote 3 of the slip opinion, the majority states that it is "unable to . . . rely" on the scale drawing because "the drawing is part of documentation about the railroad crossing in ·1976, and there is no designated evidence that his (sic) drawing accurately represents the current configuration of the railroad crossing and access from the Rogers' property to the highway." In response. I would note that such reliance is neither necessary, nor appropriate. As the moving party, the burden was at all times on Rogers to show the absence of a material question of fact. At no· place in the designated materials does Rogers challenge the accuracy of the drawing or set out the distance of the exit from Rogers' property to the railroad tracks.