**Katherine J. WILLIS and Harold Willis, Appellants–Plaintiffs,**

v.

**WARREN TOWNSHIP FIRE DEPARTMENT, Appellee– Defendant.**

**No. 49A02–9408–CV–514.**

Court of Appeals of Indiana, Second District.

May 12, 1995.

John P. Young, Young & Young, Indianapolis, for appellants.

Michael K. Lulich, Lulich, Murphy & Dowling, Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Katherine J. Willis and Harold Willis appeal the denial of their motion for partial summary judgment, whereby the court ruled that the Warren Township Fire Department is immune from liability for actions undertaken in fighting a fire at the Willises' home. We address the following issue:[1]

> Did the court err in concluding that the Fire Department is immune from liability, pursuant to Ind.Code 34–4–16.5–3(6) and (11), for negligence in fighting a fire?

We reverse.

The relevant facts are not in dispute. On May 22, 1992 at approximately 4:00 p.m., the Willises' home caught fire. The Fire Department arrived approximately three minutes later and attempted to extinguish the fire. Believing it had succeeded, the Fire Department left the house approximately one hour later. Some embers apparently were still smoldering and these embers later erupted into flames. The Fire Department arrived at the Willises' house a second time at approximately 8:18 p.m. and successfully extinguished the fire.

On April 5, 1993, the Willises filed a complaint for damages, alleging that the Fire Department had been negligent in fighting the fire, resulting in loss of property to the Willises. The Fire Department answered, raising as an affirmative defense that the Fire Department was immune from liability pursuant to IC 34–4–16.5–3 of the Indiana Tort Claims Act. On March 15, 1994, the Willises filed a motion for summary judgment on the issue of the Fire Department's immunity. The court ruled against the Willises, concluding that the Fire Department was immune from liability pursuant to IC 34–4–16.5–3(6) and (11).

■ Our standard of reviewing summary judgment determinations is well established. We stand in the same position as did the trial court in considering the summary judgment motion. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364. We consider in a light most favorable to the nonmovant those designated portions of the pleadings, affidavits, answers to interrogatories, responses to requests for admissions, and depositions, to determine whether there exist issues of material fact designated to the trial court, and whether the movant is entitled to judgment as a matter of law. *Keating v. Burton* (1993), Ind.App., 617 N.E.2d 588, *trans. denied.*

The Willises contend that the trial court erred in concluding that the Fire Department was immune from liability for "the performance of a discretionary function", IC 34–4–16.5–3(6), and "failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety", IC 34–4–16.5–3(11).

■ The Fire Department's claim of immunity was based upon Indiana's Tort Claims Act (the Act), codified at Ind.Code 34–4–16.5–1 through –22. Pursuant to the Act, governmental entities are liable for torts committed by their employees unless one of the exceptions of the Act applies. The party seeking immunity bears the burden of proving that its conduct falls within one of the exceptions set out in the Act. *Mullin v. Municipal City of South Bend* (1994), Ind.,

---

1. The Fire Department's immunity was the only issue presented for summary judgment. No other issue concerning the viability of the Willises' negligence action, such as duty, was presented and no other issue was addressed, or determination made, by the trial court. Therefore, we confine our discussion to the narrow issue of immunity.

639 N.E.2d 278. The question of whether a particular government activity is a discretionary function is a question of law for the court to decide. *Mullin, supra.*

Prior to 1988, the issue of whether a governmental entity was immune from liability under the discretionary function exception for claims of negligence in fighting a fire was a settled question. Our courts repeatedly held that actions undertaken in the course of fighting a fire were "discretionary functions" within the meaning of the Act and that governmental entities were immune from liability for such acts. *See, e.g., Ayres v. Indian Heights Volunteer Fire Dept.* (1986), Ind., 493 N.E.2d 1229; *City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184. In arriving at this conclusion, courts applied the "discretionary/ministerial" test. According to this test,

> "A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way, and in the absence of corrupt motives in the exercise of such discretion he is not liable. His duties, however, in the performance of the act, after he has once determined that it shall be done, are ministerial...." *Cataldi, supra,* 449 N.E.2d at 1186–87 (quoting *Adams v. Schneider* (1919), 71 Ind. App. 249, 124 N.E. 718, 720).

Governmental entities were immune from liability for acts deemed to be "discretionary", but were not immune from acts deemed to be "ministerial" in nature.

In 1988, however, our supreme court decided *Peavler v. Monroe County Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, in which the discretionary/ministerial test was discarded in favor of the planning/operational test in determining the applicability of the discretionary function exception. Under the new test, the court's task is to "distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity." *Greathouse, supra,* 616 N.E.2d at 366–67. The critical inquiry in evaluating claims of immunity under the new test is "not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations." *Id.* (quoting *Peavler, supra,* 528 N.E.2d at 45).

The Fire Department argues that the acts which form the basis of the Willises' complaint for damages were "of the type contemplated to be shielded with immunity, and they were a result of a conscious policy-oriented analysis." Appellee's Brief at 9. The Fire Department, which bore the burden of proving that its actions fell within the Act, explained that its actions constituted "planning", within the meaning of *Peavler,* for the following reasons:

> "The Chief at the scene of the fire and the key decision-makers establishing overall fire fighting [sic] rules, by necessity assessed the needs for this particular fire, and for the department and citizens as a whole. Certainly, an assessment of needs for personnel and equipment were made in fighting this fire by the Chief at the scene. This is exemplified by the need to release a unit to handle another call, causing the Chief to weigh the needs for this fire against the needs for another call. It included the allocation of units and the appropriate reallocation of those units and manpower from the scene at various times. It, further, included assessment of the necessity or lack thereof in tearing down walls or ceilings inside the garage. These were just some of the decisions made at the scene by the Chief, the highest executive officer of the department, causing him to weigh the alternative choices and balance the policy factors to arrive at a course of conduct." Appellee's Brief at 9.

We do not doubt that under the discretionary/ministerial analysis, the Fire Department's arguments in this regard would have prevailed. *See Ayres, supra; Cataldi, supra.* However, application of the planning/operational test achieves a different result.

In *Greathouse, supra,* the appellant's decedent was killed when his motorcycle struck a bull that had wandered onto the road. The decedent's estate filed a tort action against the local sheriff's office because the sheriff's office had been notified that there were cattle in the roadway approximately two hours before the fatal accident occurred. The sher-

iff's dispatcher spent the two hours attempting to locate the owner of the cattle, but did not succeed until after the accident. In the interim, the dispatcher did not send a deputy to the scene to remove the cattle or warn motorists.

The court rejected the sheriff's department argument that the dispatcher had exercised the sort of discretion which would shield the department from liability. The court noted that the department had established a policy for such occurrences and that the dispatcher implemented those policies, which required that the dispatcher make some decisions. Such decisions, the court concluded, were not of a character which would shield the department from liability.

> "While [the dispatcher] exercised some discretion in how he implemented the policy, his actions did not rise to the level of executive judgments that should be afforded protection under the governmental immunity doctrine. When the conduct of the governmental employee in implementing department regulations requires only performance of pre-determined procedures, and not the formulation of policy, such conduct is not immunized from judicial review as a 'discretionary function.'" *Greathouse, supra,* 616 N.E.2d at 367.

The Fire Department's argument as to why it is immune erroneously focuses upon its actions with regard to the particular strategies in fighting the fire. We agree with the Fire Department's assertion that on-site decisions regarding allocation of resources and implementation of particular fire-fighting strategies are "discretionary functions" within the meaning of IC 34–4–16.5–3(6). Such decisions necessarily involve the "'conscious balancing of risks and benefits' associated with policy formulation." *Greathouse, supra,* 616 N.E.2d at 367. Moreover, these are the types of decisions which cannot be adequately reviewed using the traditional tort standard of negligence. *See Mullin, supra.*

The planning/operational test, however, is not a bright-line test, but instead focuses upon the particular circumstances of each case. *Id.* If the focus of the complaint was upon those actions, immunity under IC 34–4–16.5–3(6) would result. However, the Willises' complaint for damages and motion for summary judgment centers as much upon the fact that the Fire Department left before the fire was extinguished as it does upon the particular strategies employed in fighting the fire.

In the instant case, the materials designated by the parties consist of the Fire Department's answers to interrogatories propounded by the Willises. The Fire Department explained that it concluded on the scene that the fire had been completely extinguished as a result of indications that the fire generated relatively low-level heat, and because damage to the structure was moderate. In addition, a visual inspection of the structure and attic revealed no remaining smoke, fire, or heat. It is undisputed that fire personnel and equipment remained at the Willises' house until it had been determined that the fire was extinguished, and then returned to the station. This fact is significant because it indicates that the decision to leave the Willises' house was not a result of decisions involving allocation of resources and manpower, which may be characterized as "planning" in nature. Rather, the Fire Department was merely exercising judgment "in the context of following a pre-determined policy." *Mullin, supra,* 639 N.E.2d at 282. The "predetermined" policy in this case is the Fire Department's practice of remaining on the scene until a fire is extinguished.

We reiterate that most, if not all, of the actions undertaken and decisions made by fire departments during the course of actually fighting a fire involve allocation of resources, the balancing of risks and benefits, and cannot adequately be reviewed by resort to traditional tort standards. Such decisions thus exemplify exercises of the policy-formulation discretion which is shielded by immunity under IC 34–4–16.5–3(6). Accordingly, the following principle of law, which originated under the discretionary/ministerial analysis, is equally true under the planning/operational analysis:

> "[D]ecisions as to how to fight a particular fire require that judgments be made re-

garding appropriate methods and techniques for the unique situation presented by that fire. Although it is possible that ministerial actions may be taken in the course of fire fighting, [if] the plaintiffs' allegations do not indicate that the actions they complain of were not discretionary ... the city is immune from liability as a matter of law and summary judgment should be entered in its favor." *Cataldi, supra,* 449 N.E.2d at 1187.

However, the Willises' complaint does not center upon the types of actions referred to in *Cataldi,* but rather upon the Fire Department's decision to leave based upon a determination that the fire was extinguished. As discussed above, the acts of the Fire Department in this regard do not fall within the scope of immunity provided by the Act. The Fire Department is therefore not immune under IC 34–4–16.5–3(6).

The trial court also concluded that the Fire Department was immune under IC 34–4–16.5–3(11), which states that a governmental entity is not liable if a loss results from:

"failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of the governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety".

The Fire Department contends that immunity pursuant to subsection (11) is appropriate because the Willises' complaint amounts to an allegation that the inspection procedure used to determine whether the fire had been extinguished was negligent.

It is worthy of note that the complaint for damages does not allege negligent inspection or negligent failure to inspect. Although the Fire Department's failure to discover that the fire was not totally extinguished necessarily calls into question the adequacy of the inspection procedure, the gravamen of the Willises' complaint was the failure to extinguish the fire. In the instant case, the inspection was merely one component of the Fire Department's fire-fighting procedure. We conclude that such is not the sort of "inspection" to which subsection (11) was intended to apply. The Fire Depart-

ment was not immune under IC 34–4–16.5–3(11).

Judgment reversed.

RUCKER, J., concurs.

SULLIVAN, J., concurs in result.