**Mary BECK, et al., Appellants–
Plaintiffs,**

v.

**CITY OF EVANSVILLE, et al.,
Appellees–Defendants.**

No. 82A04–0505–CV–248.

Court of Appeals of Indiana.

Feb. 21, 2006.

Leslie C. Shively, Shively & Associates, Evansville, for Appellants.

Robert W. Rock, Bowers Harrision, LLP, Evansville, for Appellees.

## OPINION

BAKER, Judge.

This litigation arose as the result of extraordinary rainfall and flooding that occurred in certain Evansville neighborhoods during the summers of 2003 and 2004. Plaintiffs-appellants Mary Beck, et al.[1] (the homeowners) appeal the trial court's grant of summary judgment in favor of the appellees-defendants, the City of Evansville,

---

1. The plaintiffs are Evansville residents and homeowners on the southeast side in the neighborhoods that are the subjects of this dispute.

et al.[2] (the City) with regard to their claim against the City for negligence, nuisance, and inverse condemnation, following flood damage to their residences in 2003 and 2004. Specifically, the homeowners argue that the trial court erred in finding that the City was immune from liability on their negligence and nuisance claims and in determining that there had been no taking of their property for purposes of inverse condemnation. Finding that the trial court properly granted the City's motion for summary judgment based on governmental immunity, and further concluding that the homeowners failed to establish as a matter of law that any taking of their property occurred with respect to their inverse condemnation claim, we affirm the judgment of the trial court.

## FACTS

The homeowners reside in naturally low-lying areas on the City's southeast side where surface water flows. In fact, various topographical maps indicate that the homeowners' residences were constructed in swamp areas and marshes. On occasion, flooding from rain would occur in those neighborhoods for the following reasons: (1) these are naturally low-lying areas which were swamp areas prior to development; (2) when the City receives extraordinarily heavy rainfall, flooding is likely to occur in these areas because they are low-lying and the sewers are beyond their capacity; and (3) expansion and development over the years in this area, along with the associated increase in impervious surfaces, has exacerbated surface water problems in these locations.

Sometime in 1996, the City, through its common council, enacted a sewer rate increase and incurred approximately $45 million in debt to address the storm water and sanitary wastewater problems. However, the storm water and sanitary wastewater problems exceeded the amount of debt that the City incurred in 1996. Because it was not economically feasible to address all of the Evansville's chronic storm water and sanitary wastewater problems at one time, the City commissioned the "Storm Water Master Plan" (the Plan), to adopt a long-term plan and goals to correct the problems in coordinated phases as funding became available.

On June 12, 1996, the Board of Public Works issued a "Notice of Request for Proposals." The Board of Works sought professional engineering advice to develop the Plan to improve its storm water collection system by identifying problem areas, providing solutions to the problems, prioritizing the listed areas that needed attention, and providing cost estimates for the proposed improvements. Ultimately, on July 31, the Board of Public Works selected Clark Dietz, Inc. (Clark Dietz) in Indianapolis to conduct an engineering study and prepare the Plan.

In adopting the completed Plan, the City—through the Board of Public Works—weighed competing priorities, budgetary considerations, and the allocation of resources. The Plan identified the homeowners' neighborhoods as areas that needed to be addressed for chronic storm water and sanitary wastewater problems; however, these areas were identified as second tier projects to be addressed when additional funding could be obtained. The Board of Public Works also awarded a contract to Clark Dietz to manage all of the consultants and engineering firms who were to be selected to perform design

**2.** The remaining defendants, the Board of Public Works and the Evansville Sewer & Water Utility, are agencies of the City that maintain and operate combination storm sewer and sanitary sewer facilities in the neighborhoods where the homeowners reside.

work for the Plan. Thereafter, the Board of Public Works awarded the first design contracts under the Plan for the first tier projects that were identified as the most problematic.

On July 9, 2003, at approximately 1:00 p.m., a severe thunderstorm developed over Evansville that produced torrential rain, wind gusts of approximately sixty miles per hour, and dime-sized hail. For nearly one hour, flash flooding occurred that caused some of the roads to be impassable. The airport registered 1.33 inches of rain in two hours. As a result of this storm, the homeowners experienced surface water and sewage flowing onto their property and into their homes. Following this incident, the homeowners filed their initial complaint against the City on September 26, 2003, seeking damages for nuisance and negligence. They also alleged that inverse condemnation had occurred as a result of the flood damage.

The homeowners filed an amended complaint on February 23, 2004, seeking damages from the City as the result of the flooding. In particular, the homeowners alleged that the City was negligent in failing to adequately control the flooding that resulted in the loss of use of their residences. The complaint also sought damages for nuisance, and the homeowners sought damages on a claim for inverse condemnation, contending that the City's negligence amounted to an unconstitutional taking and/or acquisition of their real property without the payment of just compensation. Specifically, the homeowners asserted that "due to the impact of the unhealthy sanitary living conditions created by the overflowing of combination sewers, [they have] suffered interference with the quiet enjoyment and use of [their] property." Appellant's App. p. 45. Hence, the homeowners claimed entitlement to damages for personal injury, emotional distress and mental suffering.

Thereafter, on July 31, 2004, Evansville again sustained extraordinary rainfall and extensive flooding over a two-hour period. The streets were impassable, some were under two feet of water, and residents paddled down the streets in canoes in some areas. Rainfall during that two-hour period was estimated to have measured 3.0 inches. In response, the Board of Public Works hired Clark Dietz to perform a detailed study of its preliminary recommendations in the 1997 Plan to address and provide possible solutions for the chronic storm water problems in the homeowners' residential areas. Additionally, on June 16, 2004, Mayor Weinzapfel formed a fifteen-person task force (Task Force) to analyze the proposed solutions presented in the Plan and the updated study that Clark Dietz had performed. The Task Force's mission was to choose a course of action to ameliorate the storm water problems at issue in the homeowners' neighborhoods as outlined by Clark Dietz in the previous studies.

On September 16, 2004, the Task Force recommended that the City create a storm water utility to fund future projects. Specifically, it was recommended that the City construct a separate storm sewer system for these areas, and construct an underground detention basin with a pump station. In addition to these recommendations, it is undisputed that the City already had a comprehensive maintenance and service plan for its storm water sewers. Moreover, the City's wastewater treatment facilities meet both state and federal standards and were approved for operation by the Indiana Department of Environmental Management.

On November 9, 2004, the City moved for summary judgment on the homeowners' complaint, claiming that it was

entitled to judgment as a matter of law because the designated evidence demonstrated that the homeowners purchased their property with the knowledge that the area suffered flooding and water problems. The City also pointed out in its motion that the designated evidence demonstrated that the homeowners suffered only short-term interference with the use of their homes caused by the rainfall and flooding. Hence, the City claimed that there had been no "taking" of any actual part of the homeowners' real estate, and that no important rights attached to the real estate had resulted in a taking. The City also argued that the homeowners had not been deprived of the beneficial use and enjoyment of their properties, and they continued to have an economically viable use for the property because they continued to live in their residences.

The City further claimed that the homeowners' claims for negligence and nuisance were barred on the grounds of governmental immunity. In particular, the City claimed immunity because it was performing a discretionary function when it commissioned and adopted the storm water Plan. The City also asserted that there was no designated evidence establishing that any alleged negligent operation or maintenance of the sewer system caused the damage to the homeowners' property. Following a hearing on the motion, the trial court granted summary judgment in favor of the City on April 29, 2005. The homeowners now appeal.

### DISCUSSION AND DECISION

#### I. Summary Judgment

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning*

*Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning*, 754 N.E.2d at 909. And all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Mullins v. Parkview Hosp., Inc.*, 830 N.E.2d 45, 53 (Ind. Ct.App.2005).

We also note that this court faces the same issues that were before the trial court. *Owens Corning*, 754 N.E.2d at 908. The party appealing from a summary judgment decision has the burden of persuading the reviewing court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.* Finally, if the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 380 (Ind. Ct.App.2004).

#### II. Governmental Immunity

#### A. Negligence and Nuisance Claims

The homeowners first contend that the trial court erred in determining that the City was immune from liability regarding their claims for nuisance and negligence. Specifically, the homeowners argue that the trial court erroneously concluded that the City was performing a discretionary function when it commissioned and adopted the storm water Plan. In essence, the homeowners argue that governmental immunity does not apply in these circum-

stances because it was the City's deliberate and conscious decision to permit new structures "to be connected to inadequate and substandard combination sewers" that caused the damages. Appellant's Br. p. 9.

■ We first address the homeowners' argument that summary judgment was improperly granted because the designated evidence showed that the City negligently permitted a connection of sewers in the homeowners' neighborhood to new real estate developments—an apartment complex and a condominium structure—which caused the flood damage. Despite this claim, the record does not reflect that the sewers in the homeowners' neighborhood were tied into the new construction projects. While the homeowners direct us to an affidavit that was submitted by an employee of their legal counsel to support this contention, the affidavit only demonstrates that this staff member obtained improvement location and building permits for the properties that allegedly burdened the sewers at issue. Moreover, the evidence did show that flooding occurs in these areas because—as noted above—the residences are located in low-lying areas that were swamps before any development had occurred. Hence, while development in the City may be among the causes that have exacerbated flooding in the homeowners' neighborhood, the lack of evidence in the record demonstrating that the homeowners' sewers were connected to the sewers of the new developments renders their argument speculative at best. Therefore, we conclude that there was no genuine issue of material fact with respect to this issue, and the grant of summary judgment in favor of the City was proper on this basis.

We now address the homeowners' related contention that summary judgment was inappropriate on the grounds that the City negligently operated and maintained the sewers and that the inadequacy of the sewers caused the damage. Indiana Code section 34–13–3–1 et seq. (the Tort Claims Act) provides for immunity from liability for State governmental entities in certain instances. For instance, Indiana Code section 34–13–3–3 provides that: "A *governmental entity* or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: ... (7) The performance of a discretionary function...." (Emphasis added).

■ In construing this statute, we have held that a governmental entity seeking immunity bears the burden of proving that its conduct falls within one of the exceptions set out in the Tort Claims Act. *Willis v. Warren Twp. Fire Dept.,* 650 N.E.2d 321, 323 (Ind.Ct.App.1995), *trans. denied.* Because the Tort Claims Act is in derogation of the common law, we must construe it narrowly and decline to find immunity if possible. *Lee v. State,* 682 N.E.2d 576, 578 (Ind.Ct.App.1997), *trans. denied.* The party seeking immunity— here, the City—"bears the burden of proving that its conduct falls within the Act, and thus is shielded from liability." *Id.*

■ Inasmuch as the City contends that it is not liable because the acts it performed here were purely discretionary, we note that in *Peavler v. Monroe County Bd. of Comm'rs,* 528 N.E.2d 40, 46 (Ind.1988), our Supreme Court adopted the "planning/operational test" as the standard for defining discretionary acts under the Tort Claims Act. It was declared in *Peavler* that the word "discretionary" refers to the exercise of political power that is held accountable only to the Constitution or the political process. *Id.* at 45. The issue of whether an act is discretionary and therefore immune from liability is a question of law for the trial court to resolve. *Id.* at 46. The essential inquiry is whether the

challenged act is the type of function that the legislature intended to protect with immunity. *Id.*

The court in *Peavler* set forth a number of factors, which, under most circumstances, point toward immunity:

1. The nature of the conduct—

   a) Whether the conduct has a regulatory objective;

   b) Whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard;

   c) Whether the conduct requires a judgment based on policy decisions;

   d) Whether the decision involved adopting general principles or only applying them;

   e) Whether the conduct involved establishment of plans, specifications and schedule; and

   f) Whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources.

2. The effect on governmental operations—

   a) Whether the decision affects the feasibility or practicability of a government program; and

   b) Whether liability will affect the effective administration of the function in question.

3. The capacity of the court to evaluate the propriety of the government's action—Whether tort standards offer an insufficient evaluation of the plaintiff's claim.

*Peavler*, 528 N.E.2d at 46. In addition to these factors, it has been held that discretionary immunity is provided to governmental units for undertaking a policy-oriented decision-making process. The decisionmakers can adopt a policy that recommends action, recommends action to be phased in over time, recommends no action, or recommends a combination of action and inaction. It does not matter what the adopted policy calls for, only that a policy was adopted. *See Gerbers, Ltd. v. Wells Cty. Drainage Bd.*, 608 N.E.2d 997, 999 (Ind.Ct.App.1993), *trans. denied* (recognizing immunity from liability when the evidence established that the drainage board had consciously weighed the risks and benefits of a drainage project). In essence, the government is exposed to liability only when no policy-oriented decision-making process has been undertaken. *Peavler*, 528 N.E.2d at 47. In the event that a governmental unit did engage in a policy-oriented decision-making process, the courts may not judge the wisdom of its decisions. Rather, that judgment is left to the political process. *Id.*

■ Applying the factors listed above to the circumstances here, the designated evidence shows that the City commissioned the Stormwater Master Plan in 1996 to address its chronic storm water problems. Appellees' App. p. 63–64; 407. The Plan specifically addressed the homeowners' areas of the City for amelioration. *Id.* at 67, 410. Official action was taken by the Common Council, the Board of Public Works, and the Utility Board to implement the Plan. *Id.* at 65, 408–10. Additionally, the City—through its officials and Boards— was required to weigh competing interests when it set priorities under the Plan. *Id.* at 64, 408. It engaged professional engineers to establish plans, specifications, and schedules for the implementation of the Plan. *Id.* While a portion of the Plan was completed before the flood damage occurred to the homeowners' residences, much of it was still being implemented at the time of the flooding, including the plan to address the problem in the homeowners' neighborhoods. *Id.* at 67, 410. The City

also has a comprehensive plan of maintenance and service for its sewers. Specifically, the designated evidence shows that the City's Department of Transportation and Services regularly maintains and cleans the stormwater sewers in accordance with that plan. *Id.* at 68, 412.

In considering this evidence and applying the factors set forth in *Peavler,* it is our view that the City was performing a discretionary function when it commissioned and adopted the Plan. As a result, we conclude that the trial court properly granted the City's motion for summary judgment on the basis of governmental immunity with respect to the nuisance and negligence claims.

■ Notwithstanding governmental immunity, we also observe that the homeowners failed to present any evidence to support their allegation that the City negligently operated and maintained the sewer system. To be sure, as set forth in the *FACTS,* the homeowners resided in areas that were previously swamp areas and where water naturally flows. Although the designated evidence established that the City has a comprehensive plan of maintenance and cleaning for its sewers, the homeowners point to this court's opinion in *Hodge v. Town of Kingman,* 519 N.E.2d 1266 (Ind.Ct.App.1988), in support of their position that the City is liable in these circumstances. In *Hodge,* a number of property owners brought an action against a town for alleged negligence in its construction, maintenance, and operation of its sewer system and for creation of a nuisance. In reversing the trial court's dismissal of the action, we observed that "in the actual work of construction and in the maintenance of sewers and drains, governments act ministerially and their negligence in these particulars may therefore be the basis of an action." *Id.* at 1269. We note, however, that the evidence in *Hodge* showed that the sewer malfunctioned. *Id.* at 1267. In this case, there has been no evidence establishing that the City's sewers were negligently operated or maintained. Further, the evidence does not show that the sewers were inadequate at the time of their construction. Hence, for all of these reasons, the homeowners do not prevail.

## C. Inverse Condemnation

The homeowners also contend that the trial court erred in granting the City's motion for summary judgment with regard to their inverse condemnation claim. Specifically, the homeowners claim that summary judgment was improperly granted because the trial court erroneously determined that the claim was barred because there was no physical acquisition of the property by the City.

■ In addressing this contention, we note that the test for the "taking" of property was set forth in *Taylor–Chalmers, Inc. v. Bd. of Comm'rs,* 474 N.E.2d 531, 532 (Ind.Ct.App.1985):

> Some physical part of the real estate must be taken from the owner or lessor, or some substantial right attached to the use of the real estate taken before any basis for compensable damage may be obtained by an owner of real estate in an eminent domain proceeding. It must be special and peculiar to the real estate and not some general inconvenience suffered alike by the public.

Similarly, in *Mendenhall v. City of Indianapolis,* 717 N.E.2d 1218, 1227–28 (Ind. Ct.App.1999), *trans. denied,* we stated:

> There are two stages to an action for inverse condemnation: 1) the landowner must show that he has an interest in land which has been taken for public use without having been appropriated under eminent domain laws; and 2) if the court

finds that a taking has occurred, then the court appoints appraisers and damages are assessed. [Citation omitted]. A taking by inverse condemnation includes 'any substantial interference with private property which destroys or impairs one's free use, enjoyment, or interest in the property.' *Town Council of New Harmony v. Parker,* 707 N.E.2d 1002, 1008 (1999).... An action for inverse condemnation is premature until such time as the landowner can establish that his property has been deprived of all economically beneficial or productive use.

Here, the homeowners point to the evidence offered by the City that the sewer system may be inadequate at times of heavy rainfall in support of their argument that they are entitled to damages for inverse condemnation. Even assuming an inadequacy of the sewer system, this court has rejected a similar claim for damages in the past when property has been damaged in similar circumstances: "Any inconvenience or incidental damage which arises from the reasonable continued use of the combined sewer system is regarded as within the rule of *damnum absque injuria.*"[3] *Rodman v. City of Wabash,* 497 N.E.2d 234, 241 (Ind.Ct.App.1986), *trans. denied.*

The designated evidence presented here shows that the homeowners have suffered only short-term interference with the use of their homes caused by heavy rainfall and flooding. Under the standards set forth above, there has been no taking of any actual physical part of the homeowners' real estate, nor have any important rights attached to the real estate been taken. There has been no permanent physical occupation of any definable part of the homeowners' property, and there has been no transfer of a definable part of the homeowners' properties. To the contrary, the homeowners or tenants have continued to live in their homes. Appellants' App. p. 141, 176, 208. In essence, the homeowners' free use, enjoyment, and interest in their properties have not been impaired. Thus, we conclude that there has been no taking of the homeowners' property as a matter of law under either the United States or Indiana Constitutions. Therefore, the trial court properly granted the City's motion for summary judgment with respect to the homeowners' inverse condemnation claim.

## CONCLUSION

In light of our discussion above, we conclude that the trial court properly granted the City's motion for summary judgment on the basis of governmental immunity under the Tort Claims Act. We further find that the homeowners have failed to create a genuine issue of material fact with respect to their claim for inverse condemnation.

The judgment of the trial court is affirmed.

NAJAM, J., and BAILEY, J., concur.

---

**3.** This term means a loss or harm for which there is no legal remedy. *Black's Law Dictio-* *nary,* p. 398 7th Edition, 1999.