LEO MACHINE & TOOL, INC.
and Elmotec Statomat, Inc.,
Appellants–Plaintiffs,

v.

POE VOLUNTEER FIRE DEPART-
MENT, INC., a/k/a Poe Community
Volunteer Fire Department, Inc., a/k/a
Poe Volunteer Fire Department and
Anderson Excavating, Inc.,[1] Appellee–
Defendants.

No. 02A03–1003–PL–143.

Court of Appeals of Indiana.

Nov. 12, 2010.

---

1. Anderson Excavating, Inc., is not a party to this appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal.

Denver C. Jordan, Bradley J. Buchheit, Blume, Connelly, Jordan, Stucky & Lauer, Fort Wayne, IN, Attorneys for Appellants.

Paul T. Fulkerson, Laura C. Bonadies, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Leo Machine & Tool, Inc. (Leo Machine & Tool) and Elmotec Statomat, Inc. (Elmotec) (collectively, Leo Machine), appeal the trial court's summary judgment deciding that Appellee–Defendant, Poe Volunteer Fire Department (Poe Fire Department), is immune from liability under the Indiana Tort Claims Act, thereby denying Leo Machine's Complaint for damages suffered as a result of a fire.

We affirm.

### ISSUE

Leo Machine raises one issue on appeal, which we restate as: Whether the trial court erred in finding that Poe Fire Department is immune from liability under Indiana's Tort Claims Act.

### FACTS AND PROCEDURAL HISTORY

Leo Machine & Tool was the tenant of a two-story commercial building in Fort Wayne, Indiana. Elmotec used a small office on the second floor of Leo Machine & Tool's building and coordinated the joint projects worked on by Leo Machine & Tool and Elmotec. At approximately 4:00 p.m. on August 27, 2007, David Smith (Smith), a Leo Machine & Tool employee, discovered a fire between the interior and exterior walls of the building. After unsuccessfully trying to extinguish the fire with a fire extinguisher, he called 911.

As various fire departments began to arrive, Assistant Chief of the Hoagland Fire Department, Greg Lepper (Assistant Chief Lepper), assumed the responsibilities of incident commander. New Haven Fire Department Chief Jon Bennett (Chief Bennett) also responded to the fire. When he observed the fire, Chief Bennett noticed the sagging roof and questioned the structural stability of the burning building. Relying on his experience of thirty-two years as a firefighter, Chief Bennett suggested to Assistant Chief Lepper not to allow any firefighters to go inside Leo Machine's building. Assistant Chief Lepper determined that the heat from the fire was too intense for standard firefighting equipment to handle. After consultation with Chief Bennett, Assistant Chief Lepper decided to retain an excavator to aid in the firefighting efforts.

Around 6:40 p.m., after receiving approval of Leo Machine & Tool's insurance company, Assistant Chief Lepper contracted with Anderson Excavating, Inc. (Anderson), who arrived on the scene at 8:00 p.m. A first plan, suggested by Chief Bennett, involved the excavator lifting the roof off of the building to gain access to the flames inside. Chief Bennett left the scene before the process was started.

At 7:35 p.m., prior to Anderson's arrival, the Fire Arson Specialized Team of Allen County (FAST) arrived. After observing the fire, FAST's lead investigator, Robert Shanabarger (Shanabarger), opined that "the fire was not completely under control. Shortly after that, it may have been under control, [ ] which [ ] just means that it's not going to spread anywhere else to any oth-

er buildings, but it was [ ] not out." (Appellants' App. p. 394).

At 8:00 p.m., Assistant Chief Stan Klepper (Assistant Chief Klepper) of the Poe Fire Department arrived at Leo Machine's building and assumed incident command from Assistant Chief Lepper. In discussing the fire scene with Assistant Chief Lepper, Assistant Chief Klepper was informed that "the decision had been made [ ] to breach a wall with the excavator and attempt to get to the scene of the fire still inside the building." (Appellants' App. p. 376). When this plan was executed, it failed because "the integrity of the wall was as such from the fire load that the minute the excavator breached it, it collapsed." (Appellants' App. p. 378). Next, Assistant Chief Klepper instructed Anderson to reach into the building with the excavator's boom and to drag burning material out so the fire could be externally extinguished. Ultimately, it became necessary to require Anderson to open each wall of the building in order to extinguish the fire. During the firefighting efforts, all of Leo Machine's machinery, equipment, tools and work in progress located on the first floor were destroyed. Eventually, the fire was extinguished after seven hours, resulting in the complete destruction of the building and loss of personal property.

On March 28, 2008 and April 2, 2008, Leo Machine & Tool and Elmotec respectively filed a Complaint against Anderson. On April 17, 2008, Leo Machine & Tool filed a Complaint against Poe Fire Department; on April 28, 2008, Elmotec filed a similar suit. In their Complaint, Leo Machine contends that (1) the total destruction of the premises and the resulting damage to Leo Machine's personal property was unnecessary; and (2) Poe Fire Department wrongfully prevented Leo Machine from recovering their equipment and other personal property located in the building prior to its destruction. The trial court consolidated the cases.

On October 12, 2009, Poe Fire Department and Anderson each filed a motion for summary judgment, both alleging immunity under the Indiana Tort Claims Act and under the common law. On December 7, 2009, Leo Machine filed their joint response. On December 17, 2009, Anderson filed its reply and five days later, Poe Fire Department filed the same. On December 22, 2009, the trial court conducted a hearing on the motions for summary judgment. On February 1, 2010, in a very elaborate and detailed Order, the trial court granted Poe Fire Department's and Anderson's motions for summary judgment.

Leo Machine now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Leo Machine contends that the trial court erred in granting Poe Fire Department's and Anderson's motions for summary judgment because Poe Fire Department and Anderson are immune under Indiana's Tort Claim Act. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind.Ct.App.2008), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–08. In doing so, we consider all of the

designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiffs claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.* When the parties have filed cross-motions on summary judgment, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

It is well established that to make a determination in a summary judgment proceeding, neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Bambi's Roofing, Inc. v. Moriarty,* 859 N.E.2d 347, 351 (Ind.Ct.App.2006). As such, Indiana Trial Rule 56(C) requires each party to a summary judgment motion "to designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." *Id.* More significantly, T.R. 56(H) specifically prohibits appellate courts from reversing a grant of summary judgment "on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court."

In the case before us, Leo Machine filed a two-volume Appendix in addition to an addendum to its appellate brief. However, conspicuously absent from the Appendix is either party's motion for summary judgment and designations of evidence. Although Leo Machine included all the designated evidence in its Appendix, without the designation of evidence filed before the trial court we are at a loss as to what precise designated evidence we are permitted to review. It is well settled that the duty of presenting a record adequate for intelligent appellate review on points assigned as error falls upon the appellant. *See* Ind. Appellate Rules 49(A) and 50. Where, as here, the record seriously impedes a *de novo* review of the trial court's entry of summary judgment, it is well within our purview to dismiss Leo Machine's appeal. *Bambi's Roofing, Inc.,* 859 N.E.2d at 352. Nevertheless, instead of dismissing the appeal, we issued an order on September 23, 2010, ordering Leo Machine to file a supplemental appendix containing all relevant documents, which it did on October 1, 2010.

## II. *Analysis*

Referencing the Indiana Tort Claims Act (ITCA), Leo Machine contends that the trial court erred in granting Poe Fire Department's motion for summary judgment. Relying on *Peavler v. Monroe Cnty. Bd. of Comm'ns,* 528 N.E.2d 40 (Ind. 1988), the seminal case on governmental immunity in Indiana, Leo Machine claims that the specific fire fighting strategy and excavation actions in this cause cannot be

characterized as a discretionary function which is entitled to immunity.

 The trial court's summary judgment granting Poe Fire Department's claim of immunity rests upon the ITCA, codified at Indiana Code chapter 34–13–3. Pursuant to the Act, governmental entities are liable for torts committed by their employees unless one of the exceptions of the Act applies. Among other more specific exceptions, "[a] government entity or an employee acting within the scope of his employment is not liable if a loss results from: (7) the performance of a discretionary function." I.C. § 34–13–3–3(7). The party seeking immunity bears the burden of proving that its conduct falls within one of the exceptions set out in the Act. *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 282 (Ind.1994), *reh'g denied*. The question of whether a particular government activity is a discretionary function is a question of law for the courts to decide. *Id.*

Prior to 1988, the issue of whether a governmental entity was immune from liability under the discretionary exception for claims of negligence in fighting a fire was a settled question. Our courts repeatedly held that actions undertaken in the course of fighting a fire were "discretionary functions" within the meaning of the ITCA and that governmental entities were immune from liability for such acts. *See, e.g., Ayres v. Indian Heights Volunteer Fire Dept.*, 493 N.E.2d 1229 (Ind.1986). In arriving at this conclusion, courts applied the "discretionary/ministerial" test, which provided that:

> A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way, and in the absence of corrupt motives in the exercise of such discretion he is not liable. His duties, however, in the performance of the act, after he has determined it shall be done, are ministerial[.]

*City of Hammond v. Cataldi*, 449 N.E.2d 1184, 1186–87 (Ind.Ct.App.1983). In other words, performance of a discretionary function required judgment and choice and involved what is proper and just under the circumstances; whereas, a ministerial act was performed in a prescribed manner, in obedience to the mandate of legal authority without the exercise of judgment upon the propriety of the act. *See, e.g., Rodman v. City of Wabash*, 497 N.E.2d 234 (Ind.Ct.App.1986); *Coghill v. Badger*, 418 N.E.2d 1201, 1211 n. 9 (Ind.Ct.App.1981).

[15, 16] In 1988, however, our supreme court decided *Peavler v. Monroe Cnty. Bd. of Comm'rs*, 528 N.E.2d 40, 47 (Ind.1988), in which the discretionary/ministerial test was discarded in favor of the planning/operational test to determine the applicability of ITCA's discretionary function exception. Under this new test, the court's task is to "distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitlement to immunity." *Greathouse v. Armstrong*, 616 N.E.2d 364, 366–67 (Ind.1993), *reh'g denied*. The critical inquiry in evaluating claims of immunity under the new test is "not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations." *Peavler*, 528 N.E.2d at 46. The governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by the conscious balancing of risk and benefits. *Id.* As such, the *Peavler* court refused to implement a bright line test in the interpretation of this planning/operational dichotomy, but instead focused upon the particular circumstances of each case.

In support of their respective arguments, the parties focus our particular attention on *Willis v. Warren Tp. Fire Dept.*, 650 N.E.2d 321, 323 (Ind.Ct.App.1995), where the homeowners claimed that the fire department had been negligent in failing to properly extinguish a fire in their garage. The fire department, after battling the fire and believing the flames to be fully conquered, departed the scene. *Id.* However, the fire was not yet fully extinguished, and four hours after their initial response the department had to return to the Willises' residence. *Id.* We concluded that because the fire department's decision to leave the scene did not amount to an allocation of resources or manpower, the fire department could not avail itself of immunity pursuant to ITCA. *Id.* at 325–26.

In its analysis the *Willis* court reasoned that "on-site decisions regarding allocation of resources and implementation of particular fire-fighting strategies are discretionary functions" within the ITCA as they "necessarily involve the conscious balancing of risks and benefits associated with policy formulation." *Id.* at 325. Applying this standard to the specific facts in *Willis*, we noted that the fire department concluded on the scene that the fire had been completely extinguished. *Id.* In addition, a visual inspection of the structure and attic revealed no remaining smoke, fire, or heat. *Id.* Further, the evidence undisputedly showed that fire personnel and equipment remained at the Willises' house until it had been determined that the fire was extinguished, and then returned to the station. *Id.* We found this fact to be significant as it indicated that the decision to leave the residence was not a result of decisions involving allocation of resources and manpower, which may be characterized as planning in nature. *Id.* Rather, we found that the fire department was merely exercising judgment in the context of following a predetermined policy, which

consisted of the department's practice of remaining on the scene until a fire is extinguished. *Id.*

In dicta, the *Willis* court clarified the ITCA's discretionary standard with respect to fire fighting strategies as follows:

We reiterate that most, if not all, of the actions undertaken and decisions made by fire departments *during the course of actually fighting a fire* involve allocation of resources, the balancing of risks and benefits, and cannot adequately be reviewed by resort to traditional tort standards. Such decisions thus exemplify exercises of the policy-formulation discretion which is shielded by immunity under [I.C. § ] 34–4–16.5–3(6). Accordingly, the following principle of law, which originated under the discretionary/ministerial analysis is equally true under the planning/operations analysis:

[D]ecisions as to how to fight a particular fire require that judgments be made regarding appropriate methods and techniques for the unique situations presented by that fire. Although it is possible that ministerial actions may be taken in the course of fire fighting, [if] the plaintiffs' allegations do not indicate that the actions they complain of were not discretionary . . . the city is immune from liability as a matter of law and summary judgment should be entered in its favor.

*Id.* at 325–26 (quoting *Cataldi*, 449 N.E.2d at 1187) (emphasis added).

Turning to the situation before us, Leo Machine designated evidence reflecting that the fire might have been extinguished at the moment Assistant Chief Klepper decided to instruct Anderson to tear down the walls of the building. Specifically, Leo Machine submitted a series of photographs taken by FAST purporting to show

that the fire was under control and the building stabilized prior to excavation. A review of these photos led Ronald L. Hopkins (Hopkins), Leo Machine's fire protection and safety expert, to opine that "the fire was substantially extinguished and the fire department had moved through most of the overhaul operations. The emergency nature of the Fire Fighting operations had stopped long before the excavator arrived[.]" (Appellants' App. p. 275). He also noted that "[p]rovided sufficient time and resources, the building occupants and owners could have been able to safely enter the structure for a reasonable period of time to complete the removal of equipment or other items prior to the complete demolition of the remaining structure." (Appellant's App. p. 275). Leo Machine's engineering expert, Steven Weddington (Weddington), noted in his report that Shanabarger indicated that "the fire department was still in the suppression stage when he arrived on the scene." (Appellants' App. p. 221). Also, Weddington's report states that "Shanabarger said there was no fire on the interior of the structure at the time of his investigation and that there was no equipment on the interior of the structure that was believed to have been involved in the fire ... Shanabarger further relayed that the incident commander ordered him out of the structure before he could finish his investigation, and the building was demolished by heavy equipment to extinguish any hidden fires." (Appellants' App. p. 221).

In addition, Poe Fire Department designated as evidence Assistant Chief Klepper's affidavit, in which he states:

At some point during our firefighting efforts, I was approached by a representative of [Leo Machine], who asked permission to enter the building in order to salvage various property inside. The intensity of the flames combined with the precarious state of the burning and partially collapsed structure made it extremely unsafe for anyone, including the firefighters with proper equipment, to enter the burning building for any reason. Since [Poe Fire Department]'s priorities at that time were to ensure the safety of all persons at the scene and to extinguish the fire as quickly as possible, I instructed [Leo Machine] representative that entering the building for purposes of salvaging property was impossible.

(Appellee's App. p. 53). Poe Fire Department also focuses on Shanabarger's deposition testimony, in which he opined:

When I first got there, my opinion was the fire was not completely under control. Shortly after that, it may have been under control versus, which, [ ] like I said, just means that it's not going to spread anywhere else to any other buildings, but it was, it was not out.

(Appellants' App. p. 394).

Reviewing the designated evidence before us, we conclude that the Poe Fire Department's actions are entitled to immunity as these were undertaken after a conscious and informed risk/benefit analysis based upon the specific challenges and threats caused by this particular fire. Here, the parties failed to designate any evidence establishing that the fire was extinguished at the moment Anderson used the excavator to peel back the walls of the building. At most, the evidence reflects that the fire was under control. While we acknowledge that at one point in his testimony Shanabarger appears to concede that at the time of his investigation he failed to allocate any fires, he immediately qualified this statement by clarifying that Assistant Chief Klepper ordered him out of the building before he could finish his investigation. As such, we conclude that firefighting efforts were still on-going at

the time Anderson was asked to utilize the excavator. In this light, the use of the excavator amounted to an on-site decision regarding the allocation of resources. *See Willis*, 650 N.E.2d at 325.

In their argument, Leo Machine focuses extensively on the fact that Anderson's excavation attempts coincided with the time that the fire was stabilized. They note that "sides of the building could have been removed without the total destruction of the equipment, machinery, and other personal property." (Appellants' Br. p. 15). However, based on the established case law, it is clear that the timing of the decision to use Anderson's excavator does not solely determine its immunity status; rather, the nature of the specific decision is equally important. Although the fire might have been stabilized, it is equally clear that the fire was not yet extinguished when the decision was made to allocate a new resource—the excavator—to battle the flames and a firefighting strategy was still being developed. As such, we conclude that Assistant Chief Klepper's decision to employ Anderson's excavator was a discretionary decision which is entitled to immunity pursuant to ITCA.[2]

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly concluded that Poe Fire Department's decision is immune from liability under the ITCA.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.

---

**2.** Because we decide this case pursuant to the ITCA, we do not need to address Poe Fire Department's alternative argument that its decision was entitled to Common Law immunity.